The opinion of the court, (Tilghman, C. J. being absent,) was delivered by,
Duncan, J.
Islands in the great rivers of Pennsylvania, under the provincial government, was never the subjects of appropriation, either by office right or settlement. The proprietaries appropriated them to their own use by special warrants. This, from the consideration of the supposed superior nature, either from the quality of the soil, or the benefit of fisheries. The state has pursued the same policy. When the land office was opened on the 8th April, 1785, for the sale of the residue of the waste lands, shortly before purchased from the natives, by tjie state, it is provided, 4 £ that all islands within the bed of the river Susquehannah, and of the east and west branches thereof, and of the rivers Ohio and Allegheny are excepted and reserved, and the said islands may be sold by special order of the president or vice president in council, conveying each of them, by public sale or otherwise, for the best prices that can be gotten for the same, and all occupancy, and every survey, claim or pretence for holding the same islands by any other title, shall be utterly void.”
Thus, from the first settlement of:the country, we see, these islands were withdrawn from appropriation, at the general prices of other land, but each was to be sold as an individual would sell his own land, for the best prices. This act may be called the magna charta, the foundation of all titles to lands in that purchase. The titles is, 44 an act to provide further regulations, whereby to secure fair and equal proceedings in the land office, and in the surveying of lands. ” It has been modified with respect to islands, but still the legislature kept in view the sale of the islands at a full and fair price, by the act of 6th March, 1793, directing the sale of certain islands in the river Susquehannah. This act gave a preemption right to improvers for three years; directed the board of property to ascertain the just value, provided that the lowest price to be fixed by them shall not be less than 8 dollars per acre. Then came the act of 27th' January, 1806, which gives rise to the present controversy, directing the sale of islands in the rivers Dela *246 ware, Ohio and Allegheny. This act gives the improver the right of pre-emption for three years, and makes special provision how the value shall be ascertained. The officers of the land office shall appoint on an application made for an island, three disinterested men, who shall value the same on their oaths, and shall certify the value to the secretary of the land office, who shall thereupon issue a warrant to such applicant, &c. The act declares that the pre-emption right shall be vested in the actual settler or improver, for the term of three years, and that after the expiration of that time, it shall be lawful for the commonwealth to grant such improved' island to the first who shall apply for the same, subject to the regulations and provisions contained in the act.
It appears, that John Andrews, under whom the defendant in error claims, was the original improver of the island in dispute. That shortly after passing the act, he made application to the land office, and the board of property issued the order of the 24th November, 1786, to valuers, who by their report in writing, dated 30th April, 1808, valued the same at one dollar and fifty cents per acre. It would appear, that John Andrews, after this valuation, took no measures to complete his title, though he still occupied the island until the 15th May, 1816, when the warrant was granted to Howard. On the grammatical construction of this warrant, it would appear, that John Andrews had paid a part of the purchase money. But this is an evident mistake in filling up the blank in the warrant, and Howard produced the receipt of the treasurer for the purchase money. A survey was made, a caveat entered by Andrews, and a decision of the board of property in favour of Howard, but no patent was issued.
On the effect of the caveat and decision, and the question whether the purchaser under Andrews had brought his ejectment within six months after the decision of the board, this court do not quite agree in opinion. But as they entertain no doubt on one point, the invalidity of the warrant to Howard, it is thought best not to delay the decision for a rehearing before a full court, refraining from any expression of opinion, whether the provision in the 5th section of the act as to caveats, and the effect of the decision of the board of property, falls within the 46th section of the act of 3d April, 1792, or does nothing more than decide to whom the patent shall issue, and that it is open to the party against whom the decir sion is to bring his ejectment at any time, unless he is barred by the act of limitations.
. The court are clearly of opinion, that the 1 and office had no author rity to issue this warrant; that it vests no title in the warrantee, and that the occupants, the defendants below, could set up this defect. They could have set it up if a patent had issued, much more could they do so, where, the legal title still remains in the state. The president who delivered the opinion now reviewing, was himself of this opinion, and seems to have given up his own judgment to *247 the construction put on this act by the board of property. This board possesses no judicial power: they are bare agents: their acts, where >they exceed their authority, void, liké the acts of all other agents. In Bixler v. Baker, 4 Binn. 213, even where the title’ had been consummated by a patent, it was decided; that every citizen interested in the land thus acquired, may contest the validity of the grant. The Chief Justice, in that decision observed, that the officers of the land office were public agents, invested with the’ power of granting lands in the name of the Commonwealth, not absolutely, hut under the condition provided by law, of which condition eVery man is bound to take notice: and Mr. Justice Ye ates, that the land officers had no authority to dispense with the provisions of a positive law, and whether the error spring from ignorance, inadvertence or misinformation, it cannot conclude.
The acts of assembly give these officers all the authority they possess. They are public agents with a limited, not a general authority, and every one acquiring land, is bound to look to the power which grants it.
All the acts on the subject of grants of islands, being in pari materia are to be taken into view, in considering what the real intention of the legislature was. We will observe, that the object of the legislature was to sell for the best price, to prefer the improver, but if he did not choose to avail himself of this indulgence, then to grant it to the first applicant, subject to the regulations and conditions contained in the act. The applicant, before he is entitled to a warrant, must obtain the' valuation of three men, appointed by the officers of the land office. This is a condition precedent, and he is to pay one third of the amount of the real valuation. If a valuation is not acted upon by the first applicant, it is extinct. It is a valuation for that applicant: the Warrant is to issue to such ap plicant. This valuation was made in 1808, on the application of Andrews, who had the pre-emption right, at his expense; it is returned for him, and nearly eight years afterwards, it is adopted as the basis of the warrant of Howard. It is not like the case to' which it has been compared, of lines run on one warrant and returned on another. That could make no difference to the state, nor to any one. But the value of the island in 1808, might be' very different from what it Was in 1816; we all know the rise' of land which took place between these periods. If Andrews had improved every acre of it, had built houses and barns, which cost him 5000 dollars, would it be just to the state, that Howard should have improvements and all for 50 dollars ? If this valuation was a permanent one, a fixed price, then at the end of fifty years, any man might claim it as a lucky hit. How the’ improvements stand in this case, whether the value of this land is increased or not, is not the point, but whether it is consistent with the express declaration of the legislature, and with the policy of the law, and the' fairness of the proceedings by the board of property. The express *248 declaration is, that the warrant shall issue to the applicant on whose account, and for whose use the valuation is made. The policy was to sell the islands for the highest price. Whenever they were sold, their then value, not the value in former years. If the claim of Andrews and of Howard, had been both as improvers, and Howard had caveated, and obtained a decision of the board of property in his favour, that valuation might stand for both; but it would open wide a door to fraud, or favouritism, to' construe the law,' that the officers of the land office could adopt án ancient valuation, and grant the land to any new applicant, though improvements' had made it of ten times more value, as the progress of population had occasioned an increase in the value; this is a construction opposed to reason, justice, and law. The state, if the improver forfeits' his pre-emption, is entitled to the rise in value, whether the increased value proceeds from the gradual rise of the land itself, or from the improvements made on it. The state, the owner, is entitled to the forfeiture, and not the man who avails himself of the neglect, or, perhaps, poverty of his neighbour, who has applied and had the island valued, but was not able to' raise the' money within three years, and that he shall turn him out of house and home, and reap the benefit of all his improvements, I can see no1 justice in, but I can see, and do feel, its great injustice.- It is no answer to say, Andrews, and the purchaser under Andrews, cannot object to this ; their interest is forfeited by their neglect. Admit their inceptive right to be forfeited, their improvements escheated, the forfeiture is to the state, and not to Howard, and the state still hold the real title. The defendant in error has not completed his title. It seems a trial had taken place between the alienee of Andrews and Howard, and verdict for Andrews. It cannot be said, that the plaintiffs in error claiming under Andrews, have no interest. But that is not the question: the question is, had the plaintiff in ejectment a title derived from the state, the officers of the land office any authority to issue this warrant. My opinion is,- they had not, that they acted under limited powers,* which they have transcended, and consequently their acts void. There is error then in the charge of the court, in declaring this warrant valid against their own better judgment.
The application was made by Andrews in due time: this was the inception of title. The valuation was made on his application, this was all done in due time, and had it been followed up by warrant and survey, would have secured the title: the state alone could take advantage of the laches. Until the state has taken advantage of it by some grant in the manner prescribed by the act giving the preemption to the improver, the improver cannot be disturbed in his possession. It is a question worthy of the gravest consideration,whether, if Andrews or his alienee never applied for a warrant on the valuation made for him, he would not justly be entitled to it, paying the purchase money and the interest from the time of the *249 valuation. Strietly, the doctrine of abandonment could not apply to a case where the applicant never in fact abandoned, but kept up his possession. Without giving any opinion how this may be, the claim of the plaintiff in the ejectment, was. one strictissimi juris, in which, if he was entitled to recover, it must be where he has strictly complied with the terms of the act. I would hold him to the very letter. In this case, the deviation has been not merely literal, but a substantial departure from the spirit of the law, and intention of the legislature.
It is a claim which comes not recommended with one spark of equity, but must rest on positive institution arid rigid enactment.
Judgment reversed.